## IN THE COURT OF APPEALS OF IOWA

No. 14-0544
Filed June 10, 2015

**IN RE THE MARRIAGE OF RONALD EUGENE PARKER
AND JENNIFER LOUISA PARKER**

**Upon the Petition of
RONALD EUGENE PARKER,**
 Petitioner-Appellant,

**And Concerning
JENNIFER LOUISA PARKER,**
 Respondent-Appellee.
_____

  Appeal from the Iowa District Court for Wapello County, Lucy J. Gamon, Judge.


  Appeal from denial of application for contempt citation/rule to show cause.

**AFFIRMED.**


  Michael O. Carpenter of Gaumer, Emanuel, Carpenter & Goldsmith, P.C., Ottumwa, for appellant.

  Cynthia D. Hucks of Box & Box Attorneys, Ottumwa, for appellee.


  Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Ronald and Jennifer Parker's twenty-eight year marriage came to an acrimonious end in 2012. In September 2013, Ronald filed an application for contempt citation/rule to show cause, alleging Jennifer failed to sell the parties' marital home and divide the net equity in the home in violation of the 2012 decree of dissolution of marriage. The district court denied the application, finding Jennifer was not in willful violation of the decree when Jennifer was unable to sell the parties' marital home for more than the total encumbrance on the property and the transactional costs associated with a sale. Ronald timely filed this appeal.[1]

The following facts and procedural history are relevant to this appeal. The parties purchased the marital home in 2010. The home appraised for $47,500 at the time of purchase, and the county assessor valued the property at $45,000 at the time of purchase. The property, note, and mortgage were in Jennifer's name because Ronald had no credit and had outstanding tax liabilities. Although there was objective evidence of the value of the property, the decretal court determined it was unable to determine the fair market value of the property for property division purposes. The court ordered the property "shall be sold to determine its fair-market value and to manage the equitable allocation of any net equity realized." Specifically, the court decreed:

---

[1] "No appeal lies from an order to punish for a contempt, but the proceedings may, in proper cases, be taken to a higher court for revision by certiorari." Iowa Code § 665.11 (2013). "It is clear section 665.11 proscribes appeal only when a defendant is found in contempt." *State v. Iowa Dist. Ct.*, 231 N.W.2d 1, 4 (Iowa 1975). Where, as here, "the application to punish for contempt is dismissed, a direct appeal is permitted." *Id.*

B. Disposition of Real Estate

1 ) The real estate at 226 Marianna Avenue in Ottumwa shall be sold at public auction to ascertain a fair-market value and to provide orderly and timely conversion of the house equity into marital debt relief:

a.   As sole titleholder, Jennifer shall arrange reasonable terms of sale that include use of an experienced real-estate auction service that employs marketing customary in the Wapello County community to obtain fair-market value. The auction shall be conducted by October 1, 2012.

b.  From gross sale proceeds, Jennifer shall pay all reasonable and customary expenses of sale (including proration of real-estate taxes and legal fees connected with the sale, and legal fees for title clearance and document preparation), shall satisfy mortgage indebtedness, and shall reimburse the parties $2,500 first-homebuyer credit (if necessary).

After the parties engaged in a flurry of motion practice related to the interpretation and enforcement of this provision of the decree, Jennifer began the process of selling the property.  A reserve-price auction was held on March 16, 2013, but the home failed to sell for the minimum price necessary to satisfy the liens on the property and to pay the transactional costs related to the sale.  The reserve price at the auction was $53,000.

In September 2013, Ronald filed an application for contempt citation/rule to show cause, alleging the "failure to pay" was willful because Jennifer "actively engaged in conduct to ensure that the house would not sell at auction, including" (1) destroying or failing to maintain the home, causing it to deteriorate and lower any expectation of a sale; (2) approaching persons at the auction and actively discouraging them from bidding; and (3) setting a reserve price that ensured the home would not sell in its present condition.  Following an evidentiary hearing, the court issued its ruling on the application to show cause, finding Ronald failed

to prove any of his allegations of contempt. The court found (1) Jennifer kept the home well-maintained and in a saleable condition, (2) she cooperated with the auctioneer "in all ways" to obtain the highest bid and there was "no credible evidence" she discouraged bidders, refused to show the home, or that she impeded the auction process in any way; and (3) Jennifer had "legitimate expenses of sale which justified a minimum reserve price in the low $50,000 range, including the mortgage payoff, first time homeowner reimbursement, auctioneer's expenses, and other expenses of sale." The court also interpreted the dissolution decree to mean that Jennifer had no further obligation to sell the marital home. Instead, the district court reasoned, Jennifer was obligated to sell the home for the purpose of determining the value and distributing the net equity, if any. The attempted sale established the fair market value. Once it was determined the property had negative equity, the district court reasoned, there was no net equity to distribute for the purposes of property distribution.

We first address the standard of review. Ronald asserts that this is an appeal from a declaratory ruling and that the standard of review is de novo. The assertion is puzzling and without merit. Ronald filed an application for contempt citation. The order appealed from is the ruling denying his application for contempt citation. Iowa Code section 598.23 provides that "If a person against whom a . . . final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt." The contempt statute provides only that a person "may" be cited and punished for contempt. Iowa Code § 598.23. Thus, "a trial court is not required to hold a party in

contempt even though the elements of contempt may exist." *In re Marriage of Swan*, 526 N.W.2d 320, 326–27 (Iowa 1995). Because the statute provides for the exercise of trial court discretion in citing and punishing a person for contempt, our review of the district court's denial of the application is for an abuse of discretion. *See id.* Further, we will affirm the judgment of the district court unless it is demonstrated the district court grossly abused its discretion in denying the application. *See id.*

Ronald's misunderstanding of the posture of this case and the applicable standard of review undermines his arguments. Ronald first contends the district court erred in interpreting the decree to allow Jennifer to set a reserve price at the public auction. He contends that "[]in order for Jennifer to prevail in this matter, she must justify her decision to place a $53,000 reserve on the Home." Ronald next contends the district court erred in interpreting the decree to mean Jennifer had no ongoing obligation to sell the home. He argues that even though the home has negative equity, awarding the home to her and holding her solely responsible for the associated debt results in an "inequitable windfall" to her. He does not explain why or how this is so. Regardless, neither of these issues, as framed by Ronald, are before this court. The only question properly before this court is whether the district court grossly abused its discretion in refusing to hold Jennifer in contempt. We answer that question in the negative.

A contempt proceeding is quasi-criminal in nature, and each element must be proved beyond a reasonable doubt. *See In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993). "A party alleging contempt has the

burden to prove the contemnor had a duty to obey a court order and willfully failed to perform that duty." *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). "If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemnor to produce evidence suggesting the violation was not willful." *Id.* There are at least two ways a contemnor may show that a failure to comply was not willful: (1) by showing that the order was indefinite on the issue; or (2) by showing that the contemnor was unable to perform the act ordered. *See Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998). "However, the person alleging contempt retains the burden of proof to establish willfulness beyond a reasonable doubt because of the quasi-criminal nature of the proceeding." *Ary*, 735 N.W.2d at 624. "[A] finding of disobedience pursued 'willfully' requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemnor had the right or not." *Id.*

Ronald failed to prove beyond a reasonable doubt that Jennifer willfully disobeyed the decree in the particulars alleged in the application for contempt citation. Jennifer cooperated with the auctioneer "in all ways" to obtain the highest bid. There was "no credible evidence" she discouraged bidders, refused to show the home, or impeded the auction in any way. The decree gave Jennifer the authority to arrange "reasonable terms of sale." Jennifer had legitimate expenses that had to be paid from the proceeds of the sale, including satisfaction of the note and mortgage, payment of taxes on the property, and transactional

costs of the sale. The decree was indefinite with respect to Jennifer and Ronald's obligations in the event the property could not be sold for value sufficient to satisfy the encumbrances on the property and the transactional costs incurred in the sale. *See Christensen*, 578 N.W.2d at 678. Given the indefiniteness of the decree and the inability of Jennifer to sell the property for more than the associated expenses, the district court interpreted the decree to allow Jennifer to set a reasonable reserve price and not to require her to continue to market the property once the auction established there was no net equity to distribute to Ronald:

> The purpose of the Court's provisions in the Decree regarding the disposition of the real estate is thus fulfilled to the extent possible. No further legitimate purpose is served by requiring Respondent to arrange for additional auction(s), when such arrangements are time consuming, expensive, and cannot be expected to produce any appreciable home equity to be divided between the parties.
> The Court concludes that Respondent is not in contempt of court for failing to sell the subject real estate at public auction, and that she has no obligation under the Decree to make further attempts at sale. Contrary to Petitioner's assertion, the Court's conclusion does not represent a "windfall" for Respondent or an "injustice" to Petitioner. Petitioner has presented no credible evidence that there is any equity in the real estate which could be of benefit to him.

On this record, we cannot conclude the district court grossly abused its discretion in denying Ronald's application for contempt/rule to show cause. *See In re Marriage of Anderson*, 451 N.W.2d 187, 191 (Iowa Ct. App. 1989) ("The failure to adhere to an unclear or ambiguous decree may defeat a finding of contempt."); *In re Marriage of Patzner*, No. 08-1648, 2009 WL 3775133, at *2 (Iowa Ct. App. Nov. 12, 2009) (affirming denial of rule to show cause where former husband's "actions were contrary to the decree" but were motivated to

avoid greater economic harm to the parties).  To the contrary, the district court's findings are supported by the evidence and its conclusions are well reasoned.

Jennifer requests an award of appellate attorney fees.  We decline to award appellate attorney fees.

**AFFIRMED.**