# IN THE COURT OF APPEALS OF IOWA

No. 18-0663
Filed March 6, 2019

IN RE THE MARRIAGE OF JYOTHSNA LATHA MADHAMANCHI
AND MADHU BABU DANDAMUDI

Upon the Petition of
JYOTHSNA LATHA MADHAMANCHI,
    Petitioner-Appellant,

And Concerning
MADHU BABU DANDAMUDI,
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Scott County, Marlita A. Greve, Judge.

The appellant appeals from the child custody, spousal support, and attorney fee provisions of the decree dissolving her marriage. **AFFIRMED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

H.J. Dane and Ryan M. Beckenbaugh of H.J. Dane Law Office, Davenport, for appellee.

Considered by Vogel, C.J., Vaitheswaran, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VOGEL, Chief Judge.**

Jyothsna Madhamanchi (Jo) appeals from the child custody, spousal support, and attorney fee provisions of the January 29, 2018 decree dissolving her marriage to Madhu Dandamudi. She asserts the district court should have placed their child in her physical care or it should have ordered additional visitation, communication, and transportation for the child. She also requests increased spousal support, trial attorney fees, and appellate attorney fees. Placing weight on the district court's findings of credibility, we affirm the decree and decline to award appellate attorney fees.

Both Jo and Madhu were born in 1979 and 1976 respectively. On June 19, 2010, they were married in India but soon moved to the United States. The parties' child, A.D., was born in the United States in June 2015. Madhu has a bachelor's degree in computer science and engineering. At the time of trial, he worked as a software engineer in Urbandale earning about $104,000 per year. Jo testified she has a bachelor's degree in zoology but has not held a job in the last twenty years.

On December 30, 2016, Jo filed a petition for separate maintenance. On January 27, 2017, Madhu filed an answer and counter petition for dissolution of marriage. After a contentious series of motions requesting sanctions or other orders, trial on the dissolution was held November 7, 2017, and January 4, 2018. On January 29, the court issued the dissolution decree, which (1) divided the parties' assets and liabilities, (2) ordered joint legal custody of A.D., (3) placed physical care of A.D. with Madhu and ordered visitation with Jo, (4) declined to award child support, (5) ordered Madhu to pay spousal support, (6) declined to award attorney fees and ordered Jo to pay costs, and (7) imposed sanctions on

Jo. Both parties filed post-trial motions to amend or enlarge, and the court issued its ruling on the motions on March 25. Jo now appeals.

"We review claimed error in dissolution-of-marriage decrees de novo. Although we decide the issues raised on appeal anew, we give weight to the trial court's factual findings, especially with respect to the credibility of the witnesses." *In re Marriage of Witten*, 672 N.W.2d 768, 773 (Iowa 2003).

We note the district court made a strong credibility finding:

> The court had a difficult time believing quite a bit Jo's testimony. This was especially evident during the testimony related to the Motion for Sanctions. Jo admitted she lied to the court on several occasions related to whether she had a Visa allowing her to be in or return to the United States. Further, Jo's claims of abuse, as well as her claims of needing to be bedridden for four months after the child's birth due to a Caesarian section delivery are just a few examples of the difficulty in believing Jo's testimony. The court finds Madhu's testimony was much more believable, much more reasonable, and made more sense.

We give weight to this determination of credibility. *See id.*

First, Jo challenges the placement of physical care of A.D. with Madhu. "When considering the issue of physical care, the child's best interest is the overriding consideration." *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). In placing physical care, the district court found the following:

> The court is convinced the child's best interests require that she be placed in the physical care and custody of Madhu. He has been her primary caregiver until Jo took the child to India and refused to return even though she had authority to do so.[1] Madhu recognizes the needs of this child require a clean living environment, proper clothing, medical care, stimulation and involvement by the parents with the child, and is willing to maintain a relationship

---

[1] We note the record shows Madhu, Jo, and A.D. traveled to India together shortly after A.D.'s birth in 2015. The parties then decided Madhu would return to the United States while Jo and A.D. remained in India with Jo's parents. Jo and A.D. returned to the United States in September 2017 after Madhu arranged for travel.

between the child and her mother and mother's family. On the other hand, the court found Jo is deficient in virtually all of these areas. The court fully agrees with Madhu that if primary physical care is with Jo, his relationship with the child will be non-existent, if not destroyed entirely.

The child deserves to have a good, solid and loving relationship with her mother **and** her father. Madhu has proven to the court he is willing and will foster a good relationship between the child and her mother. To the contrary, Jo and her family have proven to the court that she will eventually destroy any attempt at a good relationship between the child and her father simply for revenge purposes. That is not in the child's best interests and is wholly unfair to her. Jo's behaviors to date indicate she cannot provide the requisite care and support the child needs in all aspects of her life. Madhu can provide the proper day-to-day care and can provide superior care in fostering a good relationship between mother and child and father and child. The court finds it is in A.D.'s best interests to be placed with her father for primary physical care where she will be in an environment most likely to provide her with healthy physical, mental, and social maturity.

It is apparent from our reading of the transcript that the district court took great pains to make sure both parties were given ample opportunity to fully relate their versions of what has transpired within this family over the past few years. In the end, the court was persuaded Madhu was far more credible and would provide the better care for A.D. We agree with the district court that placing physical care of A.D. with Madhu is in the child's best interests.[2] *See id.*

Second, Jo appeals the visitation provisions, requesting increased visitation, an order regarding communication with A.D. via telephone or similar technology, and an equitable division of transportation and expenses for visitation. Generally, "[l]iberal visitation rights are in the best interests of the [child]." *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993). The district court

---

[2] Noting Jo's lack of employment and uncertainty of her visa status, the court declined to order Jo to pay child support.

granted Jo visitation on alternating weekends, and it granted her visitation on Wednesdays overnight as long as she and Madhu live no more than ten miles apart. The court also initially ordered Madhu responsible for all transportation and expenses for visitation. However, in its post-trial ruling, the court noted that Jo—contrary to her testimony that she intended to move from Bettendorf to Des Moines—had moved from Iowa to New Jersey. Accordingly, the court modified the decree to order Madhu responsible for all transportation and expenses for visitation only if the parties live no more than ten miles apart; otherwise, Jo is responsible for all transportation and expenses for visitation. We agree with the visitation schedule and division of transportation and expenses as it was Jo's decision to move so far away, making visitation much more complicated and expensive. The court did not address communication and we decline to do so, though inherent in the district court's decree was that each parent would support A.D.'s relationship with the other parent.

Third, Jo requests an increase in spousal support. "[S]pousal support lies in the discretion of the court," and "we must decide each case based upon its own particular circumstances." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015); *see also* Iowa Code § 598.21A(1) (2017) (providing factors for spousal support). The court ordered Madhu to pay $1500 in spousal support for six years or until Jo dies or remarries, whichever comes first. While Jo has not held employment for at least twenty years, we note the parties were married for less than eight years, she is relatively young and in good health, she has some educational training from India, and at trial she testified she needs five years of

support if she stays in the United States. Therefore, we agree with the court's award of spousal support.

Fourth, Jo argues the district court should have awarded her attorney fees. "An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions." *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996). The court found "Jo's actions, including the lies to the court and the extension of this case due to her absence with the child from the country, all contributed to Madhu's amount of attorney's fees," and it declined to order him to pay Jo's attorney fees based on her actions. We find no abuse of discretion in this decision.

Finally, Jo requests appellate attorney fees. Appellate attorney fees are within the discretion of the appellate court. *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa Ct. App. 2016) (quoting *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997)). Jo was not successful on appeal, and we decline to award appellate attorney fees.

**AFFIRMED.**